UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

JAMES RIVER INSURANCE
COMPANY, a Foreign Corporation,

        Plaintiff,

vs.                              CASE NO.: 1:11-cv-24292

EPIC HOTEL, LLC., a Florida Limited
Liability Company;  CULLIGAN
INTERNATIONAL COMPANY, a
Foreign Corporation;  HUFSEY-
NICOLAIDES-GARCIA-SUAREZ
ASSOCIATES, INC.,a Florida
Corporation;  DP PROPERTY
HOLDING, LLC, a Florida Limited
Liability Company; REVUELTA VEGA
LEON, P.A., n/k/a RVL ARCHITECTURE+
DESIGN, P.A., a Florida Professional
Corporation; DOUGLAS ORR PLUMING,
INC., a Florida Corporation; UC NORTH
DEVELOPMENT, LLC, a Florida
corporation; DUPONT PROPERTY
HOLDING, INC., a Florida corporation;
UGO COLOMBO, an individual; and
ALFREDO LOWENSTEIN, an individual,

        Defendants.
_____/

## **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

        COMES NOW the Plaintiff, JAMES RIVER INSURANCE COMPANY, by and through

undersigned counsel, pursuant to Rule 56, Federal Rule of Civil Procedure, and moves for

summary judgment, and states as follows:

1.      This is an action for declaratory relief pursuant to 28 U.S.C. §2201 to determine an actual controversy among the parties regarding coverage under an insurance policy. The initial Complaint in this matter was filed on November 30, 2011, and the Amended Complaint was filed on December 15, 2011.

2.      There is no genuine issue as to any material fact. The relief sought is the determination of the rights of the parties under the insurance policy at issue. The Plaintiff is entitled to judgment as a matter of law.

### Statement of Material Facts

A. <u>Underlying Claims</u>:

3.      On April 19, 2010, Epic Hotel served its notice of claims against Hufsey-Nicolaides-Garcia-Suarez Associates, Inc., d/b/a HNGS Engineers ("HNGS") for indemnification and monetary damages due to a two-week closure of the Epic Hotel and Residences from December 11, 2009 through December 26, 2009, after the Miami-Dade Health Department issued an advisory that identified elevated levels of legionella bacteria in the water at the Epic Hotel and Residences.  The Health Department advised hotel guests and residents not to use the water at the hotel for drinking, showering, or other uses. (See attached Notice of Claims, Exhibit "A").  Epic has taken the position that HNGS designed, implemented and approved the water filtration system, including approval of the installation of five Culligan water filters,  that failed to "prevent the proliferation of pathogens" (here, legionella bacteria) into the Epic Hotel and Residences' water supply.

4.      By letter dated July 9, 2010 to RVL Architecture+Design, P.A. ("RVL"), James River acknowledged that it had received notice of claims, or potential claims, against RVL relevant to alleged defects in the water system installed in the Epic Hotel and Residences.  Epic

took the position that RVL breached its duty to provide architectural services by failing to properly design and supervise construction and installation of the plumbing and filtration systems.

5.     All of the material allegations in the various causes of action herein identified claim damages due to the alleged contamination by pathogens of the Epic Hotel water supply and injuries causally related to infection from such pathogens.

6.     On January 29, 2010, Culligan, the manufacturer of five water filters at Epic Hotel and Residences, also put HNGS on notice of potential claims due to HNGS's involvement in the design and/or drawings for the Epic Hotel and Residences, including the pump room on the second level of the Epic Hotel and Residences, where the legionella bacteria developed (attached as Exhibit "B").

7.     On April 28, 2010, former guests of the Epic Hotel, Robert and Elizabeth Zazula, Erik and Trine Gravgaard, and Nicolai Skov, filed suit against Kimpton Hotels & Restaurants, LLC, Epic Hotel, LLC and several other defendants in the United States District Court Southern District of Florida, Miami Division Case No. 10-21381-CIV-MARTINEZ-BROWN, (hereafter "Zazula action"), (Exhibit "C"). On September 21, 2010, these plaintiffs filed their Third Amended Complaint, Case No. 10-21381-CIV-MARTINEZ-BROWN. HNGS and RVL were defendants in that action, [1] (Exhibit "D").

8.     On May 7, 2010, James River filed its Complaint for Declaratory Relief and Damages in the United States District Court for the Southern District of Florida, Miami Division, Case No.: 1:10-cv-21490 (hereafter "prior declaratory judgment action") seeking a determination

---

[1] RVL's policy differed from HNGS' policy. RVL purchased a Fungi Coverage Sublimit Endorsement that provided $100,000 coverage for defense and indemnification of that suit.

that James River had no duty to defend or indemnify HNGS under the terms of the HNGS policy, (Exhibit "E"). On November 11, 2010, the Complaint was amended to add additional parties who had real or potential interests in the declaratory judgment action. The Amended Complaint for Declaratory Relief and Damages is attached as Exhibit "F".

9.      On March 21, 2011, Epic Hotel, LLC, filed its Complaint against DP Property Holding, LLC, UC North Development, LLC, DuPont Property Holding, Inc., Ugo Colombo and Alfredo Lowenstein in the Circuit Court of the Eleventh Judicial Circuit in and for Miami, Florida, Case No. 11-08742 CA 40 (hereafter "state action"). That Complaint was amended on May 23, 2011. Pursuant to an order granting leave to amend the Amended Complaint, a Second Amended Complaint was filed on July 14, 2011. The Second Amended Complaint is attached hereto as Exhibit "G".

10.      In the prior declaratory judgment action, James River did not seek relief regarding its duties under the RVL policy because that policy contained a Fungi Coverage Sublimit Endorsement. Pursuant to that Endorsement, James River defended and indemnified RVL in the Zazula action. The coverage provided under that Endorsement was exhausted in the defense of the Zazula action.

11.      On September 20, 2010, Kimpton Hotels & Restaurants, L.L.C., Epic Hotel, L.L.C., and Epic Beneficiary, L.L.C. filed their Third Party Complaint in Case No. 10-21381-CIV-MARTINEZ-BROWN,  seeking common law indemnification, contribution and equitable subrogation from the defendants named in the Second Amended Complaint. The Third Party Complaint added CMC Construction, Inc., HNGS, Douglas Orr Plumbing, Inc. and RVL as third party defendants. Attached to the Third Party Complaint is a copy of the Second Amended Complaint, Exhibit "H".

12.     On May 3, 2011, the Zazula action was dismissed with prejudice because all the claims in that action were resolved. A copy of the order of dismissal is attached as Exhibit "I".

13.     On August 23, 2011, James River filed its Motion for Voluntary Dismissal Without Prejudice in the prior declaratory judgment action as all claims as to HNGS had been resolved, Exhibit "J".

14.     On September 30, 2011, DP Property Holding, LLC ("DP LLC."), UC North Development LLC ("UC North"), Dupont Property Holding ("DPH") and Ugo Colombo ("Columbo"), and Alfredo Lowenstein ("Lowenstein") (collectively "Defendants/Third-Party Plaintiffs"), filed their Third Party Complaint in the state action against Culligan, HNGS, Douglas Orr, and RVL. On July 17, 2012, Defendants/Third-Party Plaintiffs filed their Third Amended Third Party Complaint. A copy of the Third Amended Third Party Complaint, with the Second Amended Complaint attached as an exhibit, is attached as Exhibit "K".

15.     The Third Amended Third Party Complaint filed in the state action includes claims for common law indemnity against both HNGS and RVL.

16.     All claims against HNGS are based upon allegations that HNGS breached its duty to properly design the plumbing and filtration systems by failing to correct the dangerous condition and by failing to warn of the existence of the dangerous condition. (See Exhibit "K" *State Action*, Count II).

17.     All claims against RVL are based upon allegations that it breached its duty to provide architectural services within the prevailing standard of care. It is specifically alleged that RVL failed to properly design and supervise construction and installation of the plumbing and filtration systems, failed to correct a dangerous condition, and failed to warn of the existence of a dangerous condition. (see Exhibit "K" *State Action*, Count IV.)

18.     The "dangerous condition" referenced in the *State Action* is the presence of legionella bacteria in the water system of the Epic Hotel property. In their Third Amended Complaint in the Zazula action, the former guests directed allegations against HNGS, RVL and all the defendants named in that complaint claiming damages due to the presence of legionella bacteria. In the general allegations, it was alleged that each of the plaintiffs were exposed to legionella bacteria, thus contracting Legionnaires' disease, or suffered loss of consortium due to the spouse contracting that disease.  In the *State Action* (from which the Third Party Plaintiff's have sued HNGS and RVL for indemnity and contribution), Epic Hotel alleges the basis for the defects:  the presence of legionella bacteria that was allowed to proliferate because the hotel's water system removed too much chlorine (see paragraphs 35-44, Exhibit "G").

19.      Legionella Infection/Legionnares' Disease and Legionellosis refers to the two clinical syndromes caused by bacteria of the genus Legionella[2].

20.     HNGS and RVL are being defended by James River in the claims actually brought by The Third-Party Plaintiffs in the *State Action* under a complete reservation of rights.

B. The Insurance Policies:

21.     ***James River Policy -- HNGS:*** Effective during the period of April 21, 2009 through April 21, 2010, James River issued an architects and engineers-professional liability insurance policy to HNGS as the Named Insured, under Policy No. 00015844-3 ("HNGS policy").  (Exhibit "L").

22.     ***James River Policy -- RVL:*** Effective during the period of June 16, 2009 through June 17, 2010, James River issued an architects and engineers-professional liability insurance

_____

[2] Harrison's Principles of Internal Medicine  15th Edition 2001 pg. 945

policy to RVL as the Named Insured, under Policy No. 00038546-0. ("RVL policy"). (Exhibit "M").

23.     Both the HNGS and the RVL policies cover the insureds for a "Wrongful Act" in the performance of "Professional Services" for each claim, a limit of liability of $1,000,000, with an annual aggregate of $1,000,000, with a $25,000 deductible provision.

24.     In addition, both the HNGS and the RVL policies include **exclusion "m. (1)"** under "**SECTION III-EXCLUSIONS**" that, *inter alia*, excludes coverage for claims against HNGS based on or directly arising out of or resulting from the formation, presence, existence, or ingestion of any microorganisms or biological organisms, regardless of the cause of growth. The exclusion provides:

> ### *SECTION III - EXCLUSIONS*
>
> This Policy does not apply to any "Claim" against the "Insured":
>
> m.    Based on or directly or indirectly arising out of or resulting from:
>
> (1)   the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms or organic contamination, including but not limited to mold, mildew, fungus, spores, yeast or other toxins, allergens, infectious agents, wet or dry rot or rust or materials of any kind containing them at any time, regardless of the cause of growth, proliferation or secretion; . . . .

25.     In addition, the HNGS policy includes Form PL2111US 07-03, which is titled "Fungi or Bacteria Exclusion**,**" which provides:

> This endorsement modifies insurance provided under the following:
>
> PROFESSIONAL LIABILITY
>
> This Policy does not apply to any "Claim" against the "Insured" based on or directly or indirectly arising out of any actual or alleged "Wrongful Acts" or "Related Wrongful Acts" in any way connected with:

1.      the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms or organic contamination, including but not limited to mold, mildew, fungus, spores, yeast or other toxins, allergens, infectious agents, wet or dry rot or rust or materials of any kind containing them at any time, regardless of the cause of growth, proliferation or secretion; . . . .

We shall have no duty to investigate, defend or indemnify any insured against any "Claim" to which this endorsement applies.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

26.   Both the HNGS and RVL policies include **exclusion "o"** under "**SECTION III-EXCLUSIONS"** that, *inter alia*, excludes coverage for claims against HNGS and RVL arising out of or resulting from or caused or contributed to by pollution/environmental impairment/contamination.  "Pollutants" are defined under subsection **"I"** of

**SECTION II – DEFINITIONS,** as follows:

 I.  "Pollutants" mean any solid, liquid, gaseous, fuel, lubricant, thermal, electrical or magnetic irritant or contaminant, including but not limited to  smoke, vapor, soot fumes, fibers, radiation, acid, alkalis, petroleum, chemical or "waste."  "Waste" includes medical waste, biological infectants, and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

 **Subsection "o" of  SECTION III – EXCLUSIONS,** provides:

This Policy does not apply to any "Claim against the "Insured":

o.      Based on or directly or indirectly arising out of or resulting from or caused or contributed to by pollution/environmental impairment/contamination or any expenses or any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising out of or alleged to have arisen out of same.  All liability and expense arising out of or related to any form of pollution, whether intentional or otherwise and whether or not any resulting injury, damage, devaluation, cost or expense is expected by any insured or any other person or entity is excluded throughout this policy.

This insurance does not apply to any damages, claim, or suit arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" including but not limited to any:

(1)     Any loss, damage, cost, liability or expense of any type for the  devaluation of property, or for taking, use or acquisition or interference with the rights of others in or on property or air space, or any other type injury or expense; or

(2)     Any loss, cost, expense, fines and/or penalties arising out of any (i) request, demand, order, governmental authority or directive or that of any private party or citizen action that any insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess same, the effects of pollutants, environmental impairments, contaminants or (ii) any litigation or administrative procedure in which any Insured or others may be involved as a party as a result of actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or placement of pollutants, environmental impairments, or contaminants into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer or ground water, whether sudden, accidental or gradual in nature or not, and regardless of when.

This exclusion applies regardless of whether an alleged cause for the injury or damage is the Insured's negligent hiring, placement, training, supervision, retention, or, "Wrongful Act".

27.     In contrast to the HNGS policy, the RVL policy contains Form PL2141US01-06, titled "Fungi Coverage Sublimit Endorsement." This is attached as Exhibit "N". This form provides in part:

This endorsement modifies insurance provided by the following:

ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY POLICY

The following is added to SECTION IV – LIMIT OF LIABILITY

SCHEDULE

| Limit of Insurance Per Claim | Limit of Insurance Aggregate | Deductible |
|---|---|---|
| $100,000 | $100,000 | $25,000 |

The amount shown in the above Schedule is the maximum amount we will pay for all "Damages" and "Claims Expenses" resulting from any "Claim" against any "Insured" base on or directly arising out of any actual or alleged "Wrongful Acts" or "Related Wrongful Acts" in any way connected with:

1.  the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms or organic contamination, including but not limited to mold, mildew, fungus, spores, east or other toxins, allergens, infectious agents, wet or dry rot or rust or materials of any kind containing in them at any time, regardless of the cause of growth, proliferation or secretion.

28.     Pursuant to subsection **1b, Defense and Settlement**, under **SECTION I – COVERAGES**, "[James River] will have no duty to defend the 'insured' against any 'Claim' seeking 'Damages' to which this insurance does not apply."

29.     Legionella Infection/Legionnares' Disease and Legionellosis refers to the two clinical syndromes caused by bacteria of the genus Legionella.

30.     All claims and potential claims against HNGS and RVL directly or indirectly relate to legionella bacteria.

31.     HNGS and RVL are being defended by James River in the claims actually brought by Epic Hotel and Kimpton and potential claims by Culligan under a complete reservation of rights.

32.     In its Amended Complaint, James River seeks declaratory relief. All claims alleged against HNGS directly or indirectly are related to legionella bacteria. Therefore, under one or more of the three exclusions set forth above and in the Complaint, James River alleges it is entitled to a declaration that HNGS and RVL are not entitled to defense or indemnity under the policies at issue. The Amended Complaint states three causes of action directed to the James River HNGS policy:

a.      Count I alleges that pursuant to Exclusion "m. (1)" of SECTION III, there is no coverage for the events at issue at Epic Hotel and Residences.

b.      Count II alleges that pursuant to the policy's FUNGI OR BACTERIA EXCLUSION, there is no coverage for the events at issue at Epic Hotel and Residences.

c.      Count III alleges that pursuant to the policy's Exclusion "o" of SECTION III, there is no coverage for the events at issue at Epic Hotel and Residences.

33.     In its Amended Complaint, James River seeks declaratory relief. All claims alleged against RVL directly or indirectly are related to legionella bacteria. Therefore, under one or more of the two exclusions set forth above and in the Complaint, James River alleges it is entitled to a declaration that RVL is not entitled to defense or indemnity under the policy at issue. Further, that the coverage limits provided to RVL pursuant to Fungi Coverage Sublimit Endorsement have been exhausted. See Exhibit "O". The Amended Complaint states three causes of action directed to the James River RVL policy:

a.      Count IV alleges that pursuant to Exclusion "m. (1)" of SECTION III, there is no coverage for the events at issue at Epic Hotel and Residences.

b.      Count V alleges that the coverage limits provided in the "FUNGI COVERAGE ENDORSEMENT" have been exhausted.

c.      Count IV (erroneously designated as Count III in the Amended Complaint) alleges that pursuant to the policy's Exclusion "o" of SECTION III, there is no coverage for the events at issue at Epic Hotel and Residences.

## Memorandum of Law and Argument

A.  Summary Judgment Standard:

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." FED. R. CIV. P. 56(c). A material fact is one that might affect the outcome of the case.
*See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Where the non-moving party
fails to prove an essential element of its case for which it has the burden of proof at trial,
summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);
*Hilburn v. Murata Electronics North America, Inc.*, 181 F. 3d 1220, 1225 (11th Cir. 1999). Thus,
the task is to determine whether, considering the evidence in the light most favorable to the non-
moving party, there is evidence on which a trier of fact could reasonably find a verdict in its
favor. *See Hilburn*, 181 F. 3d at 1225, *Allen v. Tyson Foods, Inc*., 121 F. 3d 642, 646 (11th Cir.
1997). Each disputed and undisputed fact must be supported by specific evidence in the record,
such as depositions, answers to interrogatories, admissions, and affidavits on file with the Court.
"An opposing party may not rely merely on allegations or denials in its own pleading; rather, its
response must – by affidavits or as otherwise provided in this rule – set out specific facts
showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2); *CDC Builders, Inc. v. Amerisure
Mut. Ins. Co.*, 2011 U.S. Dist. LEXIS 114509 (S.D. Fla. Aug. 16, 2011).

B.  Applicable State Law:

   Jurisdiction lies with this Court pursuant to diversity. Therefore, Florida's choice of law rules
govern the determination of the law applicable to this action. *See Adolfo House Distrib. Corp. v.
Travelers Prop. & Cas. Ins*., 165 F. Supp. 2d 1332, 1335 (S.D. Fla. 2001), *citing LaFarge Corp.
v. Travelers Indem*., 118 F. 3d 1511, 1515 (11th Cir. 1997). Under Florida's choice of law rules,
*lex loci contractus* applies in contract matters, unless a statute modifies or abrogates a choice-of-
law rule. *See Prime Ins. Synd. v. B.J. Handley Trucking, Inc*., 363 F. 3d 1089, 1091 (11th Cir.
2004). Therefore, Florida law governs this action.

C.  Interpretation of Insurance Contracts:

Under Florida law, "insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." *Prudential Prop. & Cas. Ins. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993).  *See also Rigel v. Nat'l Cas. Co*., 76 So. 2d 285, 286 (Fla. 1954); *State Farm Fire & Cas. Ins. v. Deni Assocs*., 678 So. 2d 397, 400 (Fla. 4d DCA 1996), *aff'd* 678 So. 2d 397 (Fla. 1996). Thus, "where the language in the policy is plain and unambiguous, there is no special construction or interpretation required, and the plain language of the policy will be given the meaning it clearly expresses." *Fla. Farm Bureau Ins. v. Birge*, 659 So. 2d 310, 312 (Fla. 2d DCA 1994).  If an exclusionary clause in an insurance contract "is ambiguous or otherwise susceptible to more than one meaning [it] must be construed in favor of the insured[.]" *State Farm Auto Ins. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986). There must be a "genuine inconsistency, uncertainty or ambiguity in meaning . . . after resort to the ordinary rules of construction," before an exclusionary clause is construed in favor of the insured. *Id*. Courts may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Id*., *see also Nova Cas. Co. v. Waserstein*, 424 F. Supp 2d 1325, 1333 (S.D. Fla. 2006). Furthermore, just because it is necessary for a court to interpret a contract, it does not follow that the contract is ambiguous. The failure to define a term does not create ambiguity per se. *Continental Cas. Co. v. City of Jacksonville*, 654 F. Supp. 2d 1338, 1343 (M.D. Fla. 2009).

D.  The Pollution Exclusion Clause:

Florida courts, and Federal Courts applying Florida law, have reviewed the application of the pollution exclusion clause, generally referenced as the absolute pollution exclusion, on numerous occasions. *See, e.g. Nova Cas. Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1329 (S. D. Fla. 2006); *Continental Cas. Co. v. City of Jacksonville*, *supra*; *Admiral Ins. Co. v. Feit*

*Management Co.*, 321 F. 3d 1326, 1329 (11th Cir. 2003); *Auto Owners Ins. v. City of Tampa,* 231 F. 3d 1298 (11th Cir. 2000); *Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Ins. Corp.*, 636 So. 2d 700 (Fla. 1993). Uniformly these opinions have found that the language of the pollution exclusion is clear and unambiguous. While the language of these exclusion provisions is substantially the same, the exclusions fall under two categories. First, as is the case at issue, is the absolute pollution exclusion. Second is the qualified pollution exclusion. A qualified pollution exclusion provides an exception to the exclusion, most commonly that the exclusion applies unless the "discharge, dispersal, release or escape" of the pollutant "is sudden and accidental." The *Dimmitt Chevrolet* and *Continental Casualty Company* cases, *supra*, address such qualified exclusions. However, in those cases, the language of the exclusion was first analyzed to determine if it was clear and unambiguous. Having found it to be, the "sudden and accidental" exception was considered. Since *Dimmitt Chevrolet*, the term "sudden and accidental" has been considered to be clear and unambiguous.

   In *Deni Assoc. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135 (Fla. 1998), the Florida Supreme Court granted *cert* on a certified question from the Fourth District. The Fourth District asked, "Where an ambiguity is shown to exist in a [commercial general liability] policy, is the court limited to resolving the ambiguity in favor of coverage, or may the court apply the doctrine of reasonable expectations of the insured to resolve ambiguities in a [commercial general liability] policies?" *Id.* at 1136. In *Deni*, the Fourth District decided two unrelated cases which involved the same issue: whether the pollution exclusion precluded coverage for an event that could fall under the exclusion. The first incident at issue arose from the spill of ammonia in an apartment building. *Id.* at 1136-7. The second incident involved the aerial spraying of chemical insecticide. *Id.* In each case, the insurance companies denied

Page **14** of **27**

coverage based upon the pollution exclusion clauses. The pollution exclusion clause in both cases was essentially the same. *Id*. at 1136. The court quoted the language of those policies as "excluding from liability coverage any personal injury or property damage 'arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.'" *Id*. at 1137. The court then quoted the following definition from the policies: "Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalines, chemicals or waste." *Id*. The question certified to the Florida Supreme Court was whether the doctrine of reasonable expectations should be applied to assist in the interpretation of the insurance contract. The Fourth District court had found that no ambiguity existed in the contracts, but chose to certify the question anyway. In its opinion, the Florida Supreme Court firmly stated that "the pollution exclusion clause is clear and unambiguous." *Id*. In rejecting an argument that the definition of pollutant be limited to one apparently utilized by environmental engineers, that pollution means environmental or industrial pollution, the court found that the definition of pollution in the policy "as a whole is clear and unambiguous." *Id*. at 1248. Also rejected were arguments that because the words "irritant" and "contaminant" were not defined in the policy, there was ambiguity. The court found that those words have a clear and plain meaning. "The mere failure to provide a definition for a term involving coverage does not necessarily render the term ambiguous." *Id*. at 1139, quoting *Jefferson Ins. Co. v. Sea World*, 586 So. 2d 95, 97 (Fla. 5d DCA 1991). Ultimately, the *Deni* court found, "In the instant case, there are no alternative factual scenarios to which the pollution exclusion clause might be applied." *Deni* at 1137.

Furthermore, prior to the Florida Supreme Court's holding in *Deni* the same pollution exclusion issue was raised in a summary judgment motion file in the Middle District of Florida.

*West Am. Ins. Co. v. Band & Desenberg*, 925 F. Supp. 758 (M.D. Fla. 1996).  The court held that summary judgment shall be granted to the plaintiff, West American Insurance Company, stating there was no ambiguity in the language of the pollution exclusion. *Id*. at 762.  The defendant later appealed to the Eleventh Circuit.  The pollution exclusion language in *Desenberg* is essentially the same as the immediate case. In the time between the granting of summary judgment by the Middle District and the conclusion of the defendant's appeal to the Eleventh Circuit, the Florida Supreme Court issued their holding in *Deni*. In affirming the Middle District's order granting summary judgment, the Eleventh Circuit stated that the pollution exclusion clause was not ambiguous, and based on the Florida Supreme Court's recent holding in *Deni*, the summary judgment motion should be affirmed. *West Am. Ins. Co. v. Band & Desenberg*, 138 F.3d 1428 (11th Cir. Fla. 1998).

In all of the cases *supra*, the pollution exclusion clause was held to have applied the claims asserted, thus precluding coverage.

Moreover, in *James River Ins. Co. v. Ground Down Engineering, Inc*., 540 F. 3d 1270 (11th Cir. Fla. 2008), the Eleventh Circuit considered the application of the pollution exclusion clause to a claim against an engineering firm ("Ground Down") that had been retained to conduct a site assessment and to provide a report outlining whether there was "the presence or likely presence of any hazardous substances or petroleum products on a property under conditions that indicate an existing release, a past release, or a material threat of a release . . . ." The engineers produced a report that stated no recognized environmental conditions had been found. *Id*. at 1272. After the purchase of the property, it was discovered that drums and underground storage tanks were present on the property and that an expensive environmental remediation would be necessary. Thus, a claim was submitted to James River Insurance Company. James River began

providing a defense under a reservation of rights, but it also filed suit in federal court seeking

declaratory judgment that it was not required to provide coverage based upon the "pollution

exclusions" provision contained in the policy. *Id*. at 1273. The opinion quotes the pollution

exclusion language, including the definition of pollution contained therein. That language is

substantially the same as the language quoted in *Deni*, and at issue herein. In *James River*, the

district court originally found that the claim "fell outside of the pollution exclusion, because

Priority's (Ground Down) claim arose out of the failure to carry out professional responsibilities,

not out of pollution." In reversing that holding, the Eleventh Circuit discussed the phrase "arising

out of:"

> The Florida Supreme Court held that the phrase "arising out of" is not ambiguous and should
> be interpreted broadly. [*Taurus Holdings, Inc. v. United States Fid. And Guar. Co*., 913 So.
> 2d 528, 539 (Fla. 2005)]. The court declared that "the term 'arising out of' is broader in
> meaning than the term 'caused by' and means 'originating from,' 'having its origin in,'
> 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.'" *Id*. To have
> arising out of something, there must be "some causal connection, or relationship" that is
> "more than a mere coincidence" but proximate cause is not required. *Id*. "[T]he phrase
> 'arising out of' contemplates a more attenuated link than the phrase 'because of.'" *Garcia v.
> Federal Ins. Co*., 969 So. 2d 288, 293 (Fla. 2007).

*Id*. at 1275.

It was noted that "[a] contract provision is considered ambiguous if the 'relevant policy

language is susceptible to more than one reasonable interpretation, on providing coverage and

the other limiting coverage.'" *Id*. at 1274. In determining there was only one reasonable

interpretation of the policy, the court found the language of the pollution exclusion language was

intentionally broad and pertained to the claim at issue. The court considered each of the issues

raised by *Ground Down* and found that the phrase "arising out of" to be of great significance.

Ground Down contended that negligence and breach of contract were the basis of the claim, thus

the pollution exclusion did not apply. However the court found that contention to be unpersuasive. First, "the claim depends upon the existence of environmental contamination." *Id*. at 1276. Second, the language of the exclusion "contemplates that negligence by Ground Down will be the basis of a claim and clearly states that this type of claim is excluded." *Id*.

The order rendered by the court in *Nova Cas. Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1329 (S. D. Fla. 2006), considered a pollution exclusion clause. In contrast to the clause here at issue, the definition of pollutant in the Nova policy contained a different definition of "waste," which "…includes materials to be recycled, reconditioned, or reclaimed." *Id*. Similarly, the definition of waste in the HNGS and RVL policies states, "Waste includes medical waste, biological infectants, and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed." The opinion makes no reference to any provision directly addressing fungi or bacteria such as that included in the policy at issue. *Nova* involved an underlying claim for injury due to "exposure to harmful chemicals and living organisms;" "hazardous particles and chemicals;" "dangerous chemicals, particulates and microbial populations;" and "airborne and microbial contaminants." *Id*. The policy holder argued that the definition of pollutant did not include living organisms. In rejecting that position, the court carefully examined the definitions of "organism" and "microbe" in the context of the policy language. The court found that a microbe does constitute a contaminant under the definition of the *Nova* policy. Reviewing the cases offered by the policy holder, the court found "none of those cases held – let alone suggested – that a contaminant must be expressly mentioned in the clause, or must closely resemble the contaminants listed, in order to be excluded from coverage." *Id*. at 1335. "The fact that Nova's policy could have been written differently does not render it ambiguous." *Id*. at 1336. The various alleged contaminants listed in the underlying complaint, including "living

organisms," "microbial populations," "airborne and microbial contaminants," and "indoor allergens," were found to be contaminants within the meaning of the pollution exclusion, thus there was no coverage.

The comment by the court in *Nova* that Nova's policy could have been written differently is significant. The policy at issue was written differently. The definition of pollutant here includes "biological infectants." Further, and dispositive of the coverage issue, is the inclusion of Subsection "m" of SECTION III, and Form PL2111US 07-03, the "Fungi or Bacteria Exclusion." The *Nova* court's well reasoned opinion that "living organisms" and "microbial populations" are encompassed in the definition of pollutant, along with the added language in the HNGS policy, eliminates any doubt regarding the clear and unambiguous meaning of the policy. Further, a careful reading of the allegations in each of the complaints filed in the underlying actions demonstrates that all the claims for relief alleged therein arise from the "presence of legionella." *See* Exhibits "D" and "G". In every instance, the negligence at issue is alleged to have resulted in the presence of legionella or the failure to warn of the presence of legionnella. Ultimately, the injuries for which recovery is sought are infection from legionella bacteria and its remediation.

Here, HNGS has stated in their Seventh Affirmative Defense that the Plaintiff has, "sold a policy of insurance to HNGS, which purports to provide coverage to HNGS, yet through the alleged policy language and exclusions, purports to exclude all coverage, making the policy improperly illusory." The duty to defend depends solely on the facts and legal theories alleged in the pleadings and claims against the insured.  In order for a party to be defended under their coverage, the facts alleged in the complaint must potentially bring the suit within the policy coverage. *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. Fla.

1995).  HNGS further pleads as an affirmative defense that Plaintiff cannot obtain a declaratory

judgment when the judicial determination requires the resolution of factual issues. HNGS's

allegations are inconsistent with the Eleventh Circuit's holding in *Lawyers Title*.  In order to be

covered, injuries alleged in the complaint must potentially be covered under the defendant's

insurance policy, or, alternatively, where there is no interpretation of the facts in the complaint

that could result in the insured being covered, the insurance company has no duty to defend.

Such is the case in this issue before the Court. As the pollution exclusions in both contracts

between James River and HNGS and RVL is unambiguous and clear, the injuries suffered by the

plaintiffs in the underlying state court suit directly flow from pollution, and there are no other

counts in the initial complaint which would require James River to defend the case, it is clear that

there is no duty to defend either HNGS nor RVL.

     Furthermore, RVL purchased a Fungi Coverage Sublimit Endorsement that provided

$100,000 coverage for defense and indemnification of a suit arising from such.  However, as

stated *supra*, RVL has exhausted the aggregate $100,000 limit that it has purchased. (See

attached affidavit of Brandon Story, Exhibit "O").  Again, looking at the plain language of the

contract between Plaintiff and Defendant RVL, it can be shown that Plaintiff has no duty to

defend once the limit of liability has been paid.  *See Underwriters Guarantee Ins. Co. v.*

*Nationwide Mut. Fire Ins. Co.*, 578 So. 2d 34, 35 (Fla. 4d DCA 1991), stating that an insurer's

duty to defend arises solely from the language of the insurance contract, and insurer was relieved

of its duty to defend once it had paid its policy limits. The limits purchased by RVL were totally

exhausted in the Zazula action (*supra*), and, therefore, Plaintiff is under no duty to defend RVL

in the underlying state action.

E.  The Fungi or Bacteria Exclusion Clause:

Subsection "m" of SECTION III and Form PL2111US 07-03 of the policy comprise a plain, unambiguous, and comprehensive exclusion of coverage for claims arising from bacteria or other organisms. Perhaps because such language is so clear and comprehensive, the case law addressing this provision is sparse. *See*, *Residence at Ocean Grande, Inc. v. Allianz Global Risks US Ins. Co*., No. 09-15145 (11th Cir. May 18, 2010) an unpublished opinion affirming summary judgment for the insurance carrier based upon the policy's fungi and defective materials exclusions. Two Georgia cases have addressed fungi or bacteria exclusion clauses. While the language of those clauses is substantially different from that contained in the HNGS policy, the fact that there was no controversy regarding the plain meaning of the terms "fungi," "mold," or "bacteria" is relevant to this cause. In *Hathaway Development Co., Inc. v. Illinois Union Ins. Co*., No. 07-15155 Non-Argument Calendar (11th Cir. 2008),   the policy holder was seeking coverage for the expenses "incurred  to clean up, remove and remediate mold, fungi and bacteria." In one short paragraph, the court addressed the issue and found that the alleged damages were "excluded under the mold exclusion provision." *Id*. at 10.

In *Nationwide Mutual Fire Ins. Co. v. Dillard House, Inc*. 651 F. Supp 2d 1367 (N.D. Georgia 2009), the subject of the underlying claim arose from the death of a man alleged to have contracted Legionnaire's disease when he bathed in a hot tub owned by the policy holder. The fungi or bacteria exclusion provided that the insurance did not apply to:

a.   "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

*Id*. at 1370.  However, this exclusion contained a "consumption exception" that provided the bacteria exclusion does not "apply to any 'fungi' or bacteria that are, are on, or are contained in,

a good or product intended for bodily consumption." *Id*. With that clause, the court found that there was a duty to defend, but that it was premature to determine if the policies imposed a duty to indemnify. The HNGS and RVL policies contain no "consumption exception" to the fungi or bacteria exclusions of the policy.

The language of Form PL2111US 07-03 is plain, unambiguous and comprehensive. "This policy does not apply to any 'Claim' against the 'Insured' based on or directly or indirectly arising out of actual or alleged 'Wrongful Acts' or 'Related Wrongful Acts' in any way connected with:

> 1. The exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms or organic contamination, including but not limited to mold, mildew, fungus, spores, yeast or other toxins, allergens, infectious agents, wet or dry rot or rust or materials of any kind containing them at any time, regardless of the cause of growth, proliferation or secretion . . . .

There can be no alternative reasonable interpretation of this provision. In such circumstances, "there is no special construction or interpretation required, and the plain meaning of the policy will be given the meaning it clearly expresses." *Nova Cas. Co., supra* at 1333, quoting *Fla. Farm Bureau Ins. v. Birge*, 659 So. 2d 310, 312 (Fla. 2d DCA 1994) *rev. den*. 659 So. 2d 271 (Fla. 1995). Further, when this language is applied to the allegations of the underlying state court complaint, there can be no alternative factual interpretation of the basis for the claim. The Plaintiff's in the state court action complain of exposure to legionella bacteria. Whether they are alleging negligence with regard to the various defendants, failure to warn of the presence of the bacteria, deceptive and unfair trade practices, or any other cause of action pled in their Third Amended Complaint, their claims arise from their alleged exposure to and presence of legionella bacteria, resulting in their contracting of Legionnaires' disease.

In *Westport Ins. Corp. v. VM Hotel Group, LLC*, 761 F. Supp 2d 1337 (M.D. Fla. 2010), coverage for exposure to legionella bacteria under a commercial general liability policy containing qualified pollution and fungi or bacteria exclusions was at issue. However, the language of the exclusions in that policy was significantly and materially different from the HNGS and RVL policies. Further, both of the exclusions were qualified, in contrast to the absolute exclusions here at issue. The Westport pollution exclusion included the exception that the policy would cover:

> "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or origination from . . . equipment that is used to heat water for personal use, by the building's occupants or guests . . . .

*Id*. at 1344. The court found that the complaints alleged facts that fell within the qualification of the pollution exception.

Likewise, the fungi or bacteria exclusion was subject to qualifications that are not present in this cause. First, the *Westport* court considered the phrase within the exclusions that provided there is no coverage for "bodily injury" or "property damage" for "the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any 'fungi' or bacteria on or <u>within a building or structure</u>, including its contents . . . ." *Id*. at 1345 (emphasis added). The court found that the term "structure" was ambiguous, thus must be strictly construed against the insurer in favor of coverage. Second, the court considered the qualification that the exclusion "does not apply to any 'fungi' or bacteria that are, are on or are contained in, a good or product intended for bodily consumption." *Id*. at 1346. The opinion includes a lengthy analysis of the term "bodily consumption." That analysis has no relevance to this cause. The HNGS policy's fungi or bacteria exclusion is absolute.

Finally, in reaching its holdings, the *Westport* court specifically rejected the conclusion that "living organisms, microbial populations, microbial contaminants, and indoor allergens to be 'pollutants' as defined" in the policy under consideration in *Nova Casualty Co. v. Waserstein*, 424 F. Supp. 2d 1324 (S.D. Fla. 2006). While it is urged that the analytical foundation of the holdings in *Nova* is compelling, for purposes of this cause, that debate is resolved by the language of the HNGS and RVL policies. First, the definition of "pollutants" contains a definition of "waste' that includes "biological infectants." Second, the absolute and comprehensive nature of the fungi or bacteria exclusion, as modified by Form PL2111US07-03, is conclusive. In the face of the plain and unambiguous language of this exclusion, "the policy will be given the meaning it clearly expresses." *Fla. Farm Bureau Ins. w. Birge,* 659 So. 2d 310, 312 (Fla. 2d DCA 1994).

## Conclusion

The claims alleged in the underlying complaint clearly and unambiguously alleged both wrongful acts and damages arising from exposure to and presence of legionella bacteria. These claims fall squarely within the plain and unambiguous language of both the absolute pollution and the fungi or bacteria exclusions of the James River Policies. The Plaintiff, James River Insurance Company, is entitled to declaratory judgment holding that these claims are excluded from the coverage and that James River Insurance Company has no duty to defend or to indemnify HNGS or RVL pursuant to any reasonable interpretation of the policies. The only coverage applicable under these policies for the claims alleged in the underlying case was the coverage that RVL specifically purchased under the Fungi Coverage Sublimit Endorsement. The limits of that coverage were exhausted. James River respectfully moves this court to grant summary judgment.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 7, 2012, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document

is being served this day via transmission of Notices of Electronic Filing generated by CM/ECF to

those counsel or parties on the attached service list and who are registered to receive Notices of

Electronic Filing in this case.


/s/:  *Joseph E. Brooks*
JOSEPH E. BROOKS
FBN.: 0880752
Brooks & Masterson, P.L.
2629 Mitcham Drive
Tallahassee, FL 32308
Telephone:  (850) 201-0942
Facsimile: (850) 201-0909

**<u>SERVICE LIST</u>**

**Eugene E. Stearns**
**Kelly R. Melchiondo**
**Albert Hunt Marckwald, Jr.**
**Stearns Weaver Miller Weissler Alhadeff & Sitterson, PA**
**150 West Flagler Street**
**Suite 2200**
**Miami, FL 33130**
**305-789-4143 (direct)**
**305-789-2602 (fax)**
**305-789-3200 (main)**
*Attorneys for Epic Hotel, LLC*

**Lawrence S. Gordon, Esq.**
**Conroy, Simbert, Ganon, Krevans, Abel, Lurvey, Morrow & Schefer, P.A.**
**3440 Hollywood Blvd.**
**Second Floor**
**Hollywood, FL 33021**
**Tel:  954-961-1400**
**Fax: 954-967-8577**
*Attorneys for DP Property Holding, LLC,*
*UC North Development, LLC,*
*Dupont Property Holding, Inc.,*
*Ugo Colombo*
*Alfred Lowenstein*

**Joseph A. Sorce, Esq.**
**Joseph A. Sorce & Associates, P.A.**
**3211 Ponce de Leon Blvd., Suite 200**
**Coral Gables, FL 33134**
**Tel: 305-529-8544**
**Fax: 305-529-6701**
*Attorneys for HNGS*

**D. Spencer Mallard, Esq.**
**Lydecker | Diaz**
**1221 Brickell Ave., 19th Floor**
**Miami, FL 33131**
**Tel: 305-416-3180**
**Fax: 305-416-3190**
*Attorneys for Douglas Orr Plumbing, Inc.*

**James T. Armstrong**
**Robert Sanders**
**Walton Lantaff Schroeder & Carson LLP**
**9350 Financial Centre, 10th FL**
**9350 S. Dixie Highway**
**Miami, FL 33156**
**Tel: 305-671-1300**
**Fax: 305-670-7065**
*Attorneys for RVL Architect & Design*

**Eric Lundt**
**Sedgwick LLP**
**2400 E. Commercial Blvd. Ste. 1100**
**Fort Lauderdale, FL 33308-4044**
**Tel: 954-958-2500**
**Fax: 954-958-2513**
*Attorneys for Culligan International*